# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL P. BRUMLEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-06-225-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Michael P. Brumley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 24, 1954, and was 51 years old at the time of the administrative hearing. He has a high school education and previously worked as a construction foreman, construction laborer, carpenter, hopper attendant operator, and camper finisher. The claimant alleges he has been unable to work since January 20, 2003, because of alcoholism; problems with his right arm, left leg, and back; and depression.

## Procedural History

On February 27, 2004, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1394. Both applications were denied. After a hearing on September 22, 2005, ALJ Kim Parrish found that the claimant was not disabled in a decision dated February 2, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant

had further restrictions of no repetitive overhead reaching with the right upper extremity and was to avoid exposure to pollutants, dust, and fumes, on an extended basis (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies he could perform, *e.g.*, small parts assembler and cabinet assembler (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by finding he had the RFC to perform substantial gainful activity; and, (ii) by improperly analyzing his credibility. The Court finds the claimant's second contention persuasive.

The record reveals that the claimant had severe impairments of chronic obstructive pulmonary disease ("COPD"), history of laceration to the right arm with resultant nerve damage, alcohol dependence in sustained full remission, and a depressive disorder (Tr. 15). At the administrative hearing, the claimant testified that his right arm, back, left ankle, and shortness of breath kept him from working. He injured his leg while working in an oil field and because his ankle was weak, he fell walking up the steps to his house causing his arm to go through some glass severing two muscles (Tr. 233-34). The claimant could not even lift five pounds with his right arm. He underwent surgery on the arm, but he still experienced aches, pain, and some numbness and tingling whenever he tried to use it (Tr. 234-36). The claimant testified his arm had worsened since the surgery because of decreased sensation, and it was impossible for him to pick up small objects, but he could pick up larger objects if he paid careful attention (Tr. 236-37). Writing caused cramping in his hand (Tr. 237). The

claimant's low back caused him problems when walking and standing and after some time he had problems sitting. He had numbness in his left ankle that sometimes caused him to fall (Tr. 238), and he had a hernia on the left side that caused him stinging pain. He used an Albuterol inhaler for his breathing and indicated that just walking around and trying to mow his grass on the riding lawn mower caused him to be out of breath (Tr. 239-40). The claimant did not see his treating physician as often as he should because he could not afford to do so. He took Ibuprofen for pain, sometimes up to four or five per day. He also took Zoloft for depression, which he believed affected his ability to sleep, and had been hospitalized for his depression (Tr. 241-43, 246). The claimant had problems concentrating and only slept two to three hours per night because of his pain and breathing problems. He had gained 100 pounds in the past three years and the only social activity he engaged in was attending his Alcoholics Anonymous meetings when possible. The claimant only drove two to three times per month when going to the grocery store (Tr. 244-45). The claimant estimated that he could not lift more than 20 pounds with both hands (mostly with his left hand), could sit and stand for 30 minutes at a time, but he could not bend or squat (Tr. 245-46). He watched television and did some of his own cooking, although he mostly ate sandwiches. With regard to cleaning, the claimant vacuumed, but he took several breaks. He had to lie down up to four hours in a day because of pain from his back or hernia (Tr. 247-48).

In his written decision, the ALJ summarized the claimant's testimony and specifically mentioned: (i) that the claimant's treatment was mostly related to his pulmonary and

musculoskeletal problems; (ii) that he was not using medication for his respiratory condition in January 2003; (iii) the negative findings from his mental status examination; and, (iv) the negative findings from his physical consultative examination. The ALJ concluded that "the claimant's allegations regarding his limitations [were] not totally credible and [found] the claimant retain[ed] the residual functional capacity for a wide range of light work." (Tr. 16).

Deference must be given to an ALJ's credibility determination unless the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987). But credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's analysis of the claimant's credibility clearly fell below these standards.

For example, the ALJ noted that the claimant had been treated primarily for his COPD and musculoskeletal problems (not his anxiety and depression), and that he was not taking medication for his COPD in January 2003 (Tr. 16). The claimant testified, however, that he used an Albuterol inhaler for his respiratory problems and took several Ibuprofen per day for back pain and that when he did not see a physician or take medication it was because he could not afford it (Tr. 121, 241). *See Hutson v. Bowen*, 838 F.2d 1125, 1133 n.7 (10th Cir. 1988) (noting that "supporting medical evidence need not be developed simultaneously with the onset of disabling pain in every case" since "[s]ome who are disabled may not have been able to afford medical treatment[.]"). The ALJ wholly failed to discuss this testimony. *See*

*Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("[T]he ALJ failed to comment on the important evidence that treatment was inconsistent because of Mrs. Thomas's apparent inability to afford the medications . . . Whether a person is being consistently treated with available medication is important probative information.") [unpublished opinion]. *See also Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Nor did the ALJ discuss the four-part test set forth in *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), to be applied when a claimant fails to pursue treatment: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified. *Id.* at 517. *See also Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (discussing same factors). Inability to pay may be a justification for failing to pursue treatment. *See, e.g., Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may justify the failure to follow the treatment). *See also Thomas*, 147 Fed. Appx. at 760 ("[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist."), *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) [footnotes omitted].

Further, the ALJ cited *only* the medical evidence that tended to support his credibility determination, *e. g.*, Dr. Gerald Ball's findings that the claimant had good mental control, adequate long term memory, the ability to do simple arithmetic in his head, and above average intelligence. But Dr. Ball also found that the claimant had a Global Assessment of Functioning score of 58 (Tr. 157-59), which is indicative of "moderate symptoms, such as flat affect, or moderate difficulty in social or occupational functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting* The Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) [quotations omitted]. Further, the ALJ noted the findings by Dr. R.J. Helton, D.O. that the claimant had symmetrical reflexes, the absence of muscle tenderness or spasm in the cervical or lumbar spine, negative straight leg raising, the ability to oppose the thumb and the fingertips, and the ability to ambulate with a stable gate without assistive devices, but Dr. Helton also indicated the claimant had decreased breath sounds with a wheeze, decreased sensory in the left shin area going into the foot and in the right arm from the elbow down, decreased range of motion in the shoulders, back, wrists, and elbows, and decreased range of motion mainly on the left side in the lumbar spine area, hips, knees, and ankles. The claimant had weak heel and toe walking on the left side and walked with a limp on the left side (Tr.160-71). The ALJ mentioned none of these findings, which tended to support some of the claimant's subjective complaints. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)

("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Because the ALJ failed to discuss probative evidence relevant to his credibility determination in accordance with *Kepler*, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009. On remand, the ALJ should: (i) complete the analysis under *Frey* with regard to the claimant's pursuit of treatment; (ii) determine whether the claimant's subjective complaints (including pain) result in further functional limitations, and if so, include those limitations in the claimant's RFC; and, (iii) determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 10th day of September, 2007.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**